TAYLOR (BISPHAM v.). See Cases Nos. 1,-443 and 1,444.

---

## Case No. 13,780.

### TAYLOR v. BOTHIN.

[5 Sawy. 584; 8 Reporter, 516; Cox, Manual

Trade-Mark Cas. 387.] [1]

Circuit Court, D. California. Sept. 1, 1879.

TRADE-MARK — JOINT INTEREST — DISSOLUTION OF PARTNERSHIP.

Where two persons, associated in business for the manufacture and sale of a commodity, jointly adopted a trade-mark for it, they are equally entitled to its use after the dissolution of their connection; and if one of the parties obtain letters of registration in his own name, he may be compelled to transfer an equal interest to his associate.

This was a suit in equity [by James S. Taylor against Henry E. Bothin] to compel

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 8 Reporter, 516, and Cox, Manual Trade-Mark Cas. 387, contain only partial reports.]

the defendant to transfer to the complainant letters of registration by which a right to use a certain trade-mark was obtained.

John L. Boone, for complainant.
David Freidenrich, for defendant.

FIELD, Circuit Justice. It appears from the evidence in this case that, previous to the first of August, 1876, the complainant had discovered a process for making a valuable yeast powder, and that during that year he was engaged under a contract with other parties in its manufacture and sale in the city of San Francisco, designating the powder as Sea Moss baking powder; that his contract with his associates having come to an end from their inability to furnish the required means, he applied to the defendant and proposed a connection with him in its manufacture and sale. At that time the defendant was engaged in the business of selling coffee and spices, and knew nothing about the manufacture of yeast powders. After satisfying himself of the quality of the powder, the defendant agreed to give the complainant space in his establishment for its manufacture, the defendant to sell it as sole agent. As the complainant was without means and had a family to support, it was stipulated that he should receive an advance of ten dollars a week for four weeks, and if the business proved a success he was afterwards to receive one half of the profits. The business proved a success, and at the end of the first year the parties agreed to continue their connection for another year, with a stipulation that the complainant should relinquish his half interest in the profits of the yeast powder business, and receive in return one fourth of the profits of the entire business of the defendant, including that arising from the manufacture and sale of the yeast powders and that arising from dealing in coffee and spices.

After the first arrangement was made between the parties, and before any powders were manufactured, the complainant informed the defendant that another designation than that of Sea Moss should be given to the powder, as his former associates might lay some claim to the use of that designation. The name of "Mrs. Mill's Cream" for that of Sea Moss was accordingly suggested and adopted. The powders manufactured and sold under the name of "Mrs. Mill's Cream Yeast Powders" came into general use, and the business accordingly became very profitable.

During the second year of the connection, after a large demand for the powders had been created, the defendant, apparently apprehensive that the complainant might withdraw the manufacture from his establishment, secretly applied to the patent office at Washington and obtained letters of registration, giving him an exclusive right to the use of the name "Mrs. Mill's Cream" as a trade-mark of the powders. The complainant, therefore, brings this suit, and prays the court to adjudge the trade-mark to be his property, and to order the defendant to transfer the letters of registration to him, or that such other and further relief may be granted as the nature of the case may require.

Upon the statement of these facts, the only serious question for deliberation is whether the complainant is entitled to the exclusive use of the trade-mark or only to a joint or equal use of it with the defendant. Had the name been suggested and used by the complainant before the business connection with the defendant there would be no doubt of his exclusive right to it. But having been suggested and adopted after that connection was formed, upon a consultation of the parties on the subject, and then used for their joint benefit, we are led to the conclusion that they are equally entitled to its use after that connection ceased. Clearly the defendant has no such exclusive right, and the representations which he must have made to obtain the letters of registration required by law, "that no other person, firm or corporation" had the right to its use, are inconsistent with the facts. It matters not whether the arrangement between the parties constituted a partnership, or whether the complainant was to receive a portion of the profits of the business as his salary; in either case, it was his process of making a valuable powder, which was to be used, and it was to his discovery that the name was to be given. We do not understand that when the complainant said he gave his process to the defendant he intended to abandon all right to the use of it, and to the manufacture of the powder designated by its new name, but only that he made the defendant acquainted with the secret of the process—the manner in which the powder was to be made. Having imparted that knowledge, and the two, in conjunction, having subsequently adopted the name, they must be regarded as equally having the right to use it.

A decree must be entered for the complainant, adjudging him equally entitled with the defendant to the use of the trade-mark in question, and directing the defendant to execute a transfer to the complainant of an equal interest in the letters of registration, and it is so ordered.